William Robinson, Esq. VSB 76098
Robinson Gray Stepp & Laffitte, LLC
william@robinsonlaw.com
1934 Old Gallows Road, Suite 350K
Vienna, VA 22181
Telephone: (703) 789-4800
*Attorney for Plaintiff and the Class*

[Additional counsel appearing on signature page]
*Attorneys for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **KIRSTEN CORRELL,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**ICONIC MORTGAGE CORP.,** a Florida corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Kirsten Correll ("Correll" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Iconic Mortgage Corporation ("IMC" or "Defendant") to stop IMC from violating the Telephone Consumer Protection Act by making unsolicited calls and by sending autodialed text messages to consumers without their consent, including calls and texts to consumers registered on the national Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by IMC's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Correll resides in Portsmouth, Virginia.

2. Defendant IMC is a for-profit Florida corporation with its head office located in Miami, Florida. IMC does business throughout this District, throughout Virginia, and throughout the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides in this District, and because the wrongful conduct giving rise to this case arises out of IMC's business directed to this District.

## TCPA BACKGROUND

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

16. According to a respected robocall watch site, robocalls have increased by a whopping 494% in a four year span: from 8.9 billion in the last three quarters of 2015 to 43 billion in the same nine months of 2019. *See* YouMail Robocall Index, Historical Robocalls by Time, available at https://robocallindex.com/history/time/ (accessed Mar. 5, 2020).

17. Of the 58.5 billion robocalls made in 2019, YouMail reports that over half of these calls—56%—were scam calls, spoofed calls, or telemarketing calls. *Id*. Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

## INTRODUCTION TO IMC

18. IMC provides consumers and veterans with mortgage loans.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/iconic-mortgage-corp/about/

19. IMC maintains a call center that generates leads for its mortgage officers.[4]

20. IMC uses an autodialer to place calls and send text messages to these leads even when it does not have consent to call them, regardless of whether their phone numbers are registered on the national DNC.

21. In Plaintiff's case, IMC made repeated unsolicited calls and sent autodialed text messages to Plaintiff, despite Plaintiff having registered her phone number with the DNC to prevent such calls and text messages.

22. To make matters worse, IMC continued to call and text Plaintiff even after Plaintiff made it clear she wanted the communications stopped.

23. In response to these calls and texts, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease placing unsolicited calls and sending unsolicited text messages to consumers using an automatic telephone dialing system without consent and otherwise calling/texting consumers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## COMMON ALLEGATIONS

**IMC Markets its Products and Services by Making Autodialed Calls to Consumers Without Consent, Regardless of Whether Their Numbers are Registered on the DNC**

24. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines," and for all calls to numbers registered on the DNC. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶¶ 2, 20-21 (Feb. 15, 2012) (harmonizing consent requirements for autodialed and prerecorded calls with

---

[4] https://www.indeed.com/cmp/Iconic-Mortgage-Corp./jobs

5

consent requirement for calls to numbers registered on the DNC); *see* 16 CFR 310.4(b)(1) (establishing express written consent requirement for calls to DNC numbers).

25. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to sending autodialed text messages to consumers, such as Plaintiff.

26. In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

27. IMC is open about the fact that its leads are called by IMC's contact center who handles its outbound dials:



[5] https://iconicmortgagecorp.com/about-us/careers/

28.     An IMC Sales Representative is expected to initiate between 55-65 dials per hour:

**Position Summary:**
As a Sales Representative, you will be contacting assigned leads and existing customers to offer new mortgage packages and promotions. You will benefit from unlimited opportunity in terms of income and career growth, **while training to become a mortgage consultant**. You will be full-time employed and gain a wealth of knowledge and experience in the mortgage industry. In this role, you will learn everything needed to become a Mortgage Loan Originator. This exciting position within the mortgage lending industry will challenge your customer skills and sales abilities to deliver substantial financial rewards.

**Responsibilities:**
- Share the value of the service and assume the sale with every contact
- Actively participate in daily strategy huddles
- <u>Initiate 55-65 dials per hour</u>   [6]

29.     Upon information and belief, including complaints about IMC's telemarketing calls and Plaintiff's experience, IMC contact center agents place calls to consumers using an autodialer.

30.     IMC also sends unsolicited, autodialed text messages to consumers like the ones Plaintiff received.

31.     In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, which is consistent with the use of an automatic telephone dialing system to send text messages.

---

[6] https://www.linkedin.com/jobs/view/sales-representative-at-iconic-mortgage-corp-nmls%23-1547953-1226633690/

7

32. There are a number of online complaints about Defendant's calls to consumers who never gave consent to be called, including consumers that requested Defendant stop calling only to receive more calls:

-  [7]
- "I have asked over and over to stop calling…"[8]
- "Iconic mortgage, these people will not stop.calling and switch numbers after you block them, all times of the night and day and weekends, never had any dealings with them but they seem adamant on calling"[9]
- "Robocall. Non-stop calls. Always a pause when I answer. Definite robocaller."[10]
- "Unwanted Call"[11]

## PLAINTIFF'S ALLEGATIONS

### IMC Repeatedly Called and Texted Plaintiff Without Consent, Despite Plaintiff Having Registered Her Phone Number on the DNC

33. On February 27, 2019 Plaintiff registered her phone number on the DNC.

34. Plaintiff uses her cell phone for personal use only. It is not used for business purposes.

35. In November of 2019, Plaintiff received unsolicited calls from IMC. These calls were not answered by Plaintiff, but Defendant did leave blank voicemails on Plaintiff's cell phone.

---

[7] https://www.facebook.com/pg/iconicmortgage/reviews/?ref=page_internal
[8] https://www.bbb.org/us/fl/miami/profile/mortgage-broker/iconic-mortgage-corp-0633-90361215/complaints
[9] https://whocallsme.com/Phone-Number.aspx/5402151008
[10] https://phonespam.report/for-540-215-1008
[11] *Id.*

8

36. On December 9, 2019, Plaintiff received an unsolicited call from IMC using phone number 540-215-1008 to her cell phone. This call was not answered.

37. Plaintiff called 540-215-1008 on December 9, 2019 at 2:25 PM and spoke to a live agent, specifically asking for the calls to stop.

38. Despite her clear opt-out request, Plaintiff received an unsolicited, autodialed call to her cell phone from Defendant using phone number 540-215-1008 on December 13, 2019 at 2:02 PM.

39. When Plaintiff answered this call, she noticed that there was an audible pause which is indicative of an autodialer.

40. Plaintiff spoke with an employee who identified the company as Iconic Mortgage.

41. Plaintiff told the agent that she was not interested, that she had already asked IMC to stop calling and explained that her phone number is registered on the DNC, which Plaintiff said IMC was violating.

42. Despite her second clear opt-out request, Plaintiff received another unsolicited autodialed call on December 16, 2019 from Defendant using phone number 540-215-1008 on her cell phone. This call was not answered.

43. On December 24, 2019, Plaintiff received another unsolicited, autodialed call from Defendant using phone number 540-215-1008 on her cell phone. Plaintiff did not answer this call.

44. On December 24, 2019 at 2:40 PM, Plaintiff called 540-215-1008. The agent that she spoke with identified the company as being Iconic Mortgage.

45. During this call, Plaintiff asked for the communications to stop once more, as she was not looking to do business with IMC.

9

46. Despite her opt-out request, Plaintiff received an unsolicited, autodialed text message from Defendant on February 28, 2020 at 11:44 AM using phone number 786-510-4111:



47. Plaintiff believes this text message was sent using an autodialer due to its generic nature, capitalized name of "JEREMIAH" and because the text instructs Plaintiff to reply "STOP" to opt-out.

48. According to the WhitePages, 786-510-4111 belongs to James Raphael Wilson, which matches the name provided in the text messages.



[12]

---
[12] https://premium.whitepages.com/phone/1-786-510-4111

10

49. James Wilson is a Mortgage Loan Officer at IMC:



[13]

50. On April 2, 2020 at 2:30 PM, Plaintiff received another unsolicited, autodialed text message from IMC officer James Wilson, again using phone number 786-510-4111:



---

[13] https://www.linkedin.com/in/james-wilson-a40254184/

11

51.  Plaintiff believes this text message was also sent using an autodialer due to its generic nature, capitalized name of "JEREMIAH" and because the text instructs Plaintiff to reply "STOP" to opt-out.

52.  Plaintiff believes the calls she received were placed using an autodialer due to the blank voicemails she received when she didn't answer the calls.

53.  Plaintiff does not have a relationship with IMC or any of its affiliated companies, and has never consented to any contact from Defendant.

54.  IMC's unauthorized telephone calls have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Correll's use and enjoyment of her cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

55.  Seeking redress for these injuries, Correll, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited marketing calls and texts made using an autodialer and/or to consumers whose phone numbers are registered on the DNC.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiff's TCPA Claims Arising From IMC's Calls**

56.  Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Classes:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called/texted on their cell phone number, (2) using the same dialing equipment used to call/text Plaintiff, and (3) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call/text Plaintiff, (b) it did not obtain prior express written consent, or (c) it obtained the person's

cell phone number in the same way Defendant claims it obtained Plaintiff's cell phone number.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the national Do Not Call registry for at least thirty days, (4) for substantially the same reason Defendant called or texted Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call/text Plaintiff, (b) it did not obtain prior express written consent, or (c) it obtained the person's cell phone number in the same way Defendant claims it obtained Plaintiff's cell phone number.

**Internal Do Not Call Class**: All persons in the United States who from four years prior to the filing of this action through class certification: (1) Defendant (or an agent acting on behalf of Defendant) called/texted more than one time in a twelve-month period, (2) for substantially the same reason that Defendant called/texted Plaintiff.

57. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

58. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

59. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any

13

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendant utilized an automatic telephone dialing system to make its calls to Plaintiff and the members of the Classes;

    (b) whether Defendant utilized an automatic telephone dialing system to send text messages to Plaintiff and the members of the Classes;

    (c) whether Defendant systematically made multiple telephone calls/sent multiple text messages to Plaintiff and consumers whose phone numbers were registered with the DNC;

    (d) whether Defendant made calls/sent texts to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls/texts;

    (e) whether Defendant failed to implement policies and procedures for maintaining a list of persons who request not to be called/texted by Defendant before engaging in telemarketing;

    (f) whether Defendant's conduct constitutes a violation of the TCPA; and

    (g) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

60. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

61. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

14

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Correll and the Autodialed No Consent Class)

62. Plaintiff repeats and realleges paragraphs 1 through 61 of this Complaint and incorporates them by reference herein.

63. Defendant and/or its agents made unwanted solicitation telephone calls/text messages to phone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

64. These solicitation calls/texts were made/sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation calls.

65. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Correll and the Do Not Call Registry Class)

66. Plaintiff repeats and realleges the paragraphs 1 through 61 of this Complaint and incorporates them by reference herein.

67. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[14]

69. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

70. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective phone numbers on the DNC, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

71. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Do Not Call Registry Class are each entitled to up to $1,500 in damages for each violation.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Correll and the Internal Do Not Call Class)**

---

[14] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

72. Plaintiff repeats and realleges the paragraphs 1 through 61 of this Complaint and incorporates them by reference herein.

73. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74. Defendant made marketing calls to Plaintiff and members of the Internal DNC Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

75. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Correll, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages, attorneys' fees, and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**KIRSTEN CORRELL**, individually and on behalf of those similarly situated individuals

Dated: August 18, 2020

/s/ *William Robinson*
William Robinson, Esq. VSB 76098
1934 Old Gallows Road, Suite 350K
Vienna, VA 22181
Telephone: (703) 789-4800
william@robinsonlaw.com

*Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Trial Counsel*

*Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

**Pro Hac Vice application forthcoming*